**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **LYNETTE PARKS,** <br> ***BNC#21X2154J97402*,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **COMMISSIONER OF SOCIAL SECURITY,** ***sued as Frank Bisignano Commissioner of Social Security*** <br><br> **Defendant.** | ) | **Cause No. 2:25-cv-00497-ALT** |

**OPINION AND ORDER**

Plaintiff Lynette Parks appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). (ECF 1). Parks filed her opening brief on April 3, 2026, and the Commissioner filed a response in opposition on June 29, 2026. (ECF 11, 15). On July 13, 2026, Parks timely filed her reply brief. (ECF 16). Therefore, the case is ripe for ruling.

For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Parks applied for SSI and DIB in May 2022, alleging disability beginning February 1, 2021. (ECF 7 Administrative Record ("AR") at 427-40).[1] Her claims were denied initially on December 6, 2022, and upon reconsideration on May 24, 2023. (AR 198, 232, 240). On November 15, 2023, she appeared for a phone hearing before Administrative Law Judge (ALJ)

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

Leeanne Foster, and the ALJ issued an unfavorable decision December 28, 2023 (AR 198-213). Parks filed a request for review by the Appeals Council, and the Appeals Council remanded for an additional hearing. (AR 223-24). On March 20, 2025, Parks appeared for a phone hearing again before ALJ Foster. (AR 25). Parks was represented by Kevin Lichtenthal of Nash Disability Law and vocational expert (VE) Thomas Gusloff also appeared. (AR 25, 55-56). The ALJ issued an unfavorable decision on April 22, 2025, concluding Parks was not disabled because there are jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 41-43). Parks filed a request for review by the Appeals Council, which denied the request on August 26, 2025 (AR 9-11), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Parks filed a complaint in this district court requesting review of the Commissioner's final decision on October 28, 2025. (ECF 1). In this appeal, Parks argues the ALJ erred by (1) failing to establish that a significant number of jobs existed that accommodated Parks' vocational profile and work limitations, (2) not engaging with the overall record evidence of sitting limitations, (3) failing to account for the moderate limitation in concentration, persistence, or pace, requiring remand, and (4) failing to set forth a legally sufficient symptoms assessment. (ECF 11 at 4, 9, 14, 17).

On the date of the Commissioner's final decision, Parks was forty-eight years old, had a limited education, and had no past relevant work. (AR 41). When applying for disability, Parks alleged disability due to panic attacks and back problems. (AR 478).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring the ALJ to consider sequentially whether:

> the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### *B. The Commissioner's Final Decision*

At step one, the ALJ found Parks had not engaged in substantial gainful activity since February 1, 2021, the alleged onset date. (AR 28). At step two, the ALJ found that Parks had the following severe impairments: lumbar spine degenerative disc disease, osteoarthritis, carpal tunnel syndrome, depression/adjustment disorder, and ADHD. (*Id.*). At step three, the ALJ found Parks does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29).

The ALJ assigned Parks the following RFC:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger with the bilateral upper extremities. She cannot work at high exposed places and no proximity to moving mechanical parts. The claimant can understand, remember, and carry out simple instructions and make simple work-related decisions. She can deal with occasional changes in a routine work setting. She can tolerate occasional interaction with co-workers, supervisors, and the public, but to limit the duration and intensity of such interactions, there should be no teamwork or tandem tasks. She must use a cane for ambulation.

(AR 32).

At step four, the ALJ found Parks has no past relevant work. (AR 41). However, at step five the ALJ found that a hypothetical individual of Parks' age, education, experience, and RFC could perform a significant number of jobs in the national economy, including document preparer, final assembler, and inspector printed circuit board assembly. (AR 41-42). Thus, Parks' applications for SSI and DIB were denied. (AR 43).

*C. Analysis of VE Testimony*

Parks argues that the Commissioner erred by failing to establish that a significant number of jobs existed that accommodated Parks' limitations as described in the RFC. (ECF 11 at 4). She says the reliance on the VE's testimony is improper because the ALJ relied on the outdated job of document preparer, based on confusing and contradictory VE testimony. (*Id.*). This argument is unpersuasive.

Parks correctly notes that the Social Security Administration bars ALJs from citing certain occupations, including document preparer, to support a finding of "not disabled" because their existence in the national economy is questionable. Emergency Message (EM) 24027-REV[2]; (ECF 11 at 4-5). However, the ALJ may rely on the job of document preparer if evidence from a

---

[2] Available at: https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM.

VE supports the ALJ's conclusion that the occupation is currently performed. EM 24027-REV. The required evidence includes that the job's "requirements are consistent with the individual's RFC, and [the job] exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant. The determination or decision must include or summarize the…VE's evidence that supports such a conclusion." *Id.*

In this case, given there were two hearings, two VEs provided testimony; Ja'Nita Marbury in the 2024 hearing and Thomas Gusloff in the 2025 hearing. (AR 25, 81). Both VEs testified that the job of document preparer is now performed in a more modern way but the essential job functions remain the same. (AR 60, 81). Following the 2025 hearing, Parks' attorney objected to VE Gusloff's testimony arguing that the document preparer job is obsolete. (AR 26). However, the ALJ overruled the objection citing the testimony of both VEs and indicating they came to the same conclusion; the document preparer job still exists in a more modern way. (*Id.*).

Parks argues that the two VEs' testimonies are different and the ALJ erred in failing to resolve their inconsistencies. (ECF 11 at 4). However, the ALJ cites Marbury's testimony to resolve the initial objection (AR 26) and only relies on Gusloff's testimony going forward in the decision and to make a determination of disability in step 5 (AR 42). As such, the ALJ was not required to analyze any potential inconsistences. *See Krystof B. v. Bisignano*, No. 24-cv-2634, 2025 WL 2622588, at *4 (D. Minn. Jul. 17, 2025) (R. & R.) (where the ALJ relied on one VE's testimony, while disregarding conflicting VE testimony in determining disability, the Court found the ALJ did not need to analyze the conflict), *accepted in* 2025 WL 2374407 (Aug. 15, 2025). The regulations require an ALJ to investigate where the VE's testimony regarding a job description differs from the Dictionary of Occupational Titles, *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008), but Parks has identified no caselaw where such obligation exists for

competing VE testimony. Additionally, to the extent there are inconsistencies between the VEs' testimonies, both VEs found that Parks would be able to perform the requirements of document preparer given her age, education, work experience, and RFC. (AR 41-42, 81, 212).

In the challenged decision, the ALJ thoroughly and properly evaluates Gusloff's testimony in compliance with the Social Security Administration's guidance finding the job of document preparer exists and Parks is capable of performing it. *See* EM 24027-REV. In this analysis, the ALJ properly relies on Gusloff's testimony that the job of document preparer exists in the national economy in numbers that, when combined with other jobs, are significant, and that an individual with Parks' age, education, work experience, and RFC could perform the job of document preparer. (AR 41-42). The ALJ then summarizes Gusloff's testimony in support. The ALJ writes,

> Regarding the document preparer job, the vocational expert testified that it was originally described in the DOT as preparing documents for microfilming. It still exists in some capacities. However, technology has advanced, and records are stored more digitally. As such, digital scanning technology is involved. However, the job of document preparer has remained the same in that they are preparing documents that in the past someone else would microfilm and currently, somebody else would be digitally scanning. The vocational expert confirmed that his testimony was based upon his professional experience relating to the document preparer job. He testified that the remainder of his testimony is consistent with the DOT and its companion on the physical, postural, environmental and manipulative limitations. He testified that he does review the job task requirements as indicated in the DOT for things like types of tasks, and the amount of contact with others while performing the work tasks, and it is also based on his professional experience.

(AR 42). With this analysis, the ALJ properly evaluated the VE Gusloff's testimony and the ALJ's reliance on the VE evidence is supported by substantial evidence.

*D. Analysis of Evidence for Sitting Limitation*

Parks argues the ALJ erred by not considering various evidence which suggests she cannot sit for long periods of time, despite finding that she can perform sedentary work. (ECF 11

at 9). However, this argument is unpersuasive and the ALJ's conclusion that Parks can perform sedentary work is supported by substantial evidence.

In support of her argument, Parks cites her own testimony, a statement from her friend, and numerous treatment records from Dr. Ungar-Sargon, who Parks claims, "consistently documented her difficulty with sitting for prolonged periods and her need to change positions." (ECF 11 at 9). Throughout the decision, the ALJ references Dr. Ungar-Sargon's records and notes that in a 2022 assessment, the doctor found she could sit for less than two hours in an 8-hour workday. (AR 35). However, the ALJ discusses at length why she finds Dr. Ungar-Sargon's opinion unpersuasive. The ALJ found that the doctor's purported limitations are not consistent with the rest of the record, especially considering his own treatment notes indicate that Parks' pain is reduced significantly and well managed by medication. (AR 40). Specifically, the ALJ points to pain management records from Wellspring Pain Clinic which show Parks "reported staying busy with her son, cleaning house, walking, playing catch, going to the pool with her son, and using her bike for exercise. She reported to her pain management doctor that moving makes her feel better [and] … taking the kids trick or treating and walking for over 2 hours." (*Id.*). The ALJ found these records inconsistent with Dr. Ungar-Sargon's severe sitting and standing/walking limitations. (*Id.*). The ALJ greatly considered Dr. Ungar-Sargon's records and provided ample reasoning in rejecting the persuasiveness of his opinion.

Next, Parks may not use her own subjective reports of symptoms to prove disability, absent other evidence. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). The ALJ considered Parks' subjective reports, such as her testimony that "she could stand for up to 20 minutes at a time, sit for 20 minutes at a time, and walk for 15 minutes at a time." (AR 33). However, the ALJ found Parks' statements were not consistent with the medical evidence. (*Id.*). In considering the medical evidence, including the opinion and treatment records of Dr. Unger-

Sargon, the ALJ properly rejected and found it did not support significant sitting limitations, as discussed above. (AR 40). Parks has not pointed to other medical evidence which contradicts the finding that Parks can perform sedentary work. As such, the ALJ properly considered Parks' subjective reports.

Additionally, it should be noted that the ALJ adopted a more restrictive RFC than recommended by the state agency doctors. The state agency doctors opined that Parks had the capacity for work at the light level of exertion with occasional postural limitations. (AR 39, 152-53, 190-92). However, the ALJ found those opinions inconsistent with evidence that supported a restricted range of sedentary work with additional postural, manipulative, and environmental limitations to accommodate for pain from Parks' lumbar degenerative disc disease among other ailments. (AR 39). Considering the medical evidence likely supports a less restrictive RFC, the ALJ's more protective RFC is supported by substantial evidence. *See Elton P. v. Kijakazi*, No. 2:22CV390, 2023 WL 7126417, at *3 (N.D. Ind. Oct. 30, 2023) ("Where, as here, the RFC is more limited than that opined by any doctor, the Seventh Circuit has found there is no error.").

Further, in terms of the sitting limitation, the state agency doctors also found that Parks could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. (AR 152, 191). This is the very conclusion adopted by the ALJ. As defined by the regulations, sedentary work requires the ability to sit most of the day. 20 C.F.R. §§ 404.1567(a), 416.967(a). More specifically, sedentary work requires an individual "to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." Social Security Ruling 96-9p, 1996 WL 374185, at *6 (July 2, 1996). Given the ALJ's RFC for sedentary work mirrors the recommendation from the state agency doctors, the RFC is supported by substantial evidence.

Parks generally argues that the ALJ failed to build a logical bridge to the conclusion that

Parks can sit for six hours in a workday.[3] However, as discussed, the ALJ properly discussed and dismissed evidence which may support more substantial sitting restrictions, and ultimately adopted a more restrictive RFC than recommended by the state agency doctors. It is Parks' burden to prove her disability. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citations omitted); *Flener ex rel. Flener*, 361 F.3d 442, 448 (7th Cir. 2004). The ALJ's decision as to the sitting limitations in limiting Parks to sedentary work is supported by substantial evidence.

*E. Limitations for Concentration, Persistence, and Pace*

Parks argues the ALJ erred by failing to connect her moderate limitation in concentration, persistence, and pace to the limitation of simple work. (ECF 11 at 14). The RFC provides Parks can "understand, remember, and carry out simple instructions and make simple work-related decisions." (AR 32). Whether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis. *See Johnson v. O'Malley*, No. 4:23-CV-39-GSL, 2024 WL 1327338, at *6 (N.D. Ind. Mar. 27, 2024) ("[C]learly, where the ALJ connects the assessed limitations to evidence supporting those limitations, even vague or generic restrictions to simple work is sufficient."). Here, the ALJ properly connected the moderate limitation with other evidence and the RFC.

In assigning the moderate limitation in concentration, persistence, and pace, the ALJ noted that Parks reported "her ability to pay attention was affected by her pain level, and she could finish what she started. [Parks] reported that she was 'good' at following written instructions and that she could follow spoken instructions 'very well.[']  At the hearing, [Parks]

---

[3] Parks points to *Goode v. Comm'r of Soc. Sec.*, where the Court reversed and remanded, finding the ALJ erred for failing to explain why she believes the plaintiff can "sit with normal breaks for a total of 6 hours in an 8-hour workday." No. 2:25-CV-22 JD, 2026 WL 607536, at *6 (N.D. Ind. Mar. 3, 2026). However, the ALJ in that case made repeated errors that compounded the ALJ's error in reasoning, which do not exist in this case, such as drawing negative inferences from the plaintiff's discontinuation in treatment. *Id*. In Parks' case, the ALJ built a logical bridge to her conclusion and adopted an RFC more restrictive than recommended by the state agency doctors.

could testify without need for redirection." (AR 31 (internal citations omitted)). In crafting the RFC, the ALJ considered the opinion of Dr. Amanda Mayle, PsyD, consultative examiner, who found Parks' thought process was within normal limits ("in tempo and coherent") and her memory, insight, and judgment were adequate. (AR 40). Additionally, the ALJ found "[Parks] did appear to have some fluctuating attention, and she had some difficulty with serial 3's and calculations. Accordingly, the undersigned limits the claimant to unskilled work." (*Id*. (internal citations omitted)).

Parks' brief suggests the ALJ's analysis stops there, but that is not the case. (*See* ECF 11 at 15). The ALJ discusses the treatment notes from Porter Stark, which the ALJ finds to "reflect grossly normal mental status examinations." (AR 40). These records "show that her ADHD medications work well, and that she was being a caregiver for her mother, and do not support such restrictive limitations…." (*Id*.). Here, the ALJ refers to a mental impairment questionnaire by Andrea Farmer, which shows a moderate limitation in carrying out simple instructions and a marked limitation in maintaining concentration for extended periods. (AR 1792). It is these limitations, the ALJ reasons, which are unsupported given Parks' ability to care for her mother, which she was paid for 80 hours per month (AR 36). (AR 40).

The ALJ echoes this reasoning earlier in the decision saying,

> Overall, the record supports a limitation to unskilled work, but the undersigned does note that the claimant's records indicate that her ADHD is well-controlled with medication. However, the record does show some inattention (B17F/2). As such, the undersigned finds the claimant can understand, remember and carry out simple instructions, and make simple work-related decisions. This limitation is consistent with the evidence showing the claimant's ability to manage her finances and, in her ability, to act as a caregiver for her mother (B9E/4, 14E/4, B29F/6). Additionally, such limitation is consistent with the grossly normal mental status evaluations (B11F/113-114, B19F/4-5, B17F/3-4, B25F/8-9, B29F9).

(AR 39).

The ALJ thus considered the mitigating facts, building a logical bridge and explaining the lack of need for additional limitations to account for Parks' moderate limitation[4] in concentration, persistence, and pace. Thus, the ALJ has supported that the more vague, "understand, remember, and carry out simple instructions and make simple work-related decisions" (AR 32) addresses Parks' moderate limitation by substantial evidence. *See Johnson*, 2024 WL 1327338, at *6.

The ALJ was not required to follow "a particular formula or incant magic words" in her analysis. *Garland v. Dai*, 593 U.S. 357, 369 (2021) (citations and internal quotes omitted). "[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id*. at 358 (citation and quotation marks omitted). Indeed, ALJs "are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley,* 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (the minimal articulation requirement is "an obligation that extends no further than grounding a decision in substantial evidence" (internal citations omitted)). In this case, although Parks may not be satisfied with the extent of the ALJ's analysis, the ALJ's path is easily discerned and supported by substantial evidence.

*F. Analysis of Parks' Reported Symptoms*

Parks lastly argues the ALJ failed to provide a legally sufficient analysis of Parks' subjective, reported symptoms. (ECF 11 at 17). Parks is correct that the ALJ may not disregard her testimony just because it is not corroborated by medical evidence, *see Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015), but the ALJ did not do so.

[4] The state agency doctors found Parks had a mild limitation in concentration, persistence, and pace. (AR 151, 189).

First, Parks says the ALJ "noted [her] activities but did not set forth how those were inconsistent with [her] allegations." (ECF 11 at 17). These activities include cleaning, walking, going to the pool, stretching, playing catch, and using a bike, helping her mother, and trick or treating. (*Id.*). The ALJ is required to "look[ ] at Plaintiff's daily activities to see if they corroborate[ ] her…claims," which she did. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). For instance, the ALJ says that Parks

> testified that her pain affected her ability to function in her home and with her family, as she had to do things at a slower pace, and it was difficult to get tasks completed. She testified that she could stand for up to 20 minutes at a time, sit for 20 minutes at a time, and walk for 15 minutes at a time.

(AR 33). However, later in the decision, the ALJ explains,

> The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not consistent with the evidence…. The record shows that the claimant does stretches, exercises and uses a bike (B30F/35). The claimant reported staying busy with her son, cleaning house, walking, playing catch, going to the pool with her son, and using her bike for exercise (B30F/35, B33F/4, B33F/5). She reported to her pain management doctor that moving makes her feel better (B33F/4). Furthermore, she took the kids trick or treating and walked for over 2 hours (B33F/55)….As such, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not consistent with the evidence of record.

(AR 38).

ALJs "are subject to only the most minimal of articulation requirements." *Warnell,* 97 F.4th at 1053. Additionally, the ALJ's decision should be viewed holistically. *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021). With those considerations in mind, the ALJ's analysis as excerpted above is sufficient. The ALJ acknowledges Parks' testimony and contrasts that with her reported activities, finding inconsistency between the two and the possible severity in the intensity, persistence, and limiting effects of her symptoms. A more specific or elaborate explanation is not necessary. *Deborah M.*, 994 F.3d at 791 ("[T]he ALJ's failure to mention a few

limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal.").

Next, Parks argues that ALJ improperly relied on her improvement with pain medications because the same evidence shows her to have sharp, stabbing, and shooting pain. (ECF 11 at 19). The Commissioner argues the ALJ "reasonably considered … Plaintiff['s] alleged disabling pain, [Parks] also repeatedly stated that her pain was decreased to 3/10 with medications, she felt her medications were working well, and she did not report ongoing side effects." (ECF 15 at 11-12). Although a slightly generous description of the evidence, this is generally accurate. The ALJ summarizes Parks' pain record acknowledging Parks' description of the pain, the effectiveness of medication and the level of pain. (*See* AR 36-38). Although the ALJ ultimately concluded that the evidence supported the conclusion Parks' pain was well managed, the ALJ did not ignore Parks' complaints of pain. The ALJ instead properly analyzed Parks' own descriptions of her pain, positive and negative, as contained in the medical records.

Parks also argues, "[t]he ALJ relied on one office visit note that Ms. Parks was not experiencing depressive symptoms, but psychiatric symptoms wax and wane and would not be expected to be present at all exams." (ECF 11 at 19). However, the ALJ's analysis is more complex than as characterized. The ALJ writes, "[t]he mental status examinations have been grossly normal (B11F/113-114, B19F/4-5, B17F/3-4, B25F/8-9, B29F/9)…. Moreover, in March 2025, she denied depressive symptoms and reported having depressive symptoms in the fall when her daughter moved to Florida with her grandson (B32F/11)." (AR 38). As such, the ALJ cites to this office visit as well as numerous other documents to support her conclusion regarding Parks' metal health and intensity, persistence, and limiting effects of her symptoms.

Lastly, Parks argues the ALJ erred for failing to explain how inconsistent use of her cane "was a material inconsistency vitiating all her symptoms." (ECF 11 at 19-20). This again, is an

extreme characterization of the ALJ's analysis. The ALJ notes, "[t]he claimant appears to use a cane somewhat inconsistently. To that end, at the first consultative examination, the claimant presented with a cane (B16F/2), but at the second consultative examination in May 2023, she did not use a cane (22F/3)." (AR 38). This fact, along with a variety of other evidence allowed the ALJ conclude that Parks "statements about the intensity, persistence, and limiting effects of her symptoms are not consistent with the evidence." (*Id.*). The inclusion of this one observation was hardly used to vitiate all her symptoms as Parks claims. Additionally, the ALJ took Parks' cane use seriously, and crafted an RFC which specified, Parks "must use a cane for ambulation." (AR 32). The ALJ did not err in relying on or analyzing Parks' cane use. Overall, the ALJ provided a legally sufficient analysis of Parks' subjective, reported symptoms and the decision is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Parks.

SO ORDERED.

Entered this 29th day of September 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge